588 S.E.2d 142

The STATE, Respondent,

v.

Tunzy Antwain SANDERS, Appellant.

No. 3684.

Court of Appeals of South Carolina.

Heard Sept. 9, 2003.
Decided Oct. 20, 2003.
Rehearing Denied Feb. 19, 2004.

Deputy Chief Attorney Joseph L. Savitz, III, Office of Appellate Defense, of Columbia, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, and Assistant Attorney General Derrick K. McFarland, of Columbia; and Solicitor Barbara R. Morgan, of Aiken, for Respondent.

STILWELL, J.

In a re-trial, Tunzy Sanders was convicted of murder, attempted armed robbery, and criminal conspiracy. He appeals, arguing his rights under the Confrontation Clause of the Sixth Amendment were violated when the trial court admitted the prior testimony of Aurelien Vigier, a jailhouse informer, inasmuch as he was unable to confront and cross-examine Vigier about an alleged "tacit understanding" that Vigier would receive "some benefit by virtue of his cooperation in this case." We affirm.

## BACKGROUND

Sanders and two others were charged following the shooting death of a restaurant employee who was leaving at the close of business with that day's proceeds.

At the first trial, two jailhouse informants, Aurelien Vigier and David Staley, testified appellant confessed to the crime while imprisoned. The State also introduced the statement of Temetrius Williams, which placed Sanders and his cohorts at the scene with the intent to commit a robbery. Williams retracted her statement on the stand.

The jury found Sanders guilty as charged. Sanders appealed the convictions on the ground his Sixth Amendment right to counsel was violated when his sister, an attorney from another state, was removed as counsel prior to trial. Our supreme court reversed the convictions and remanded the case for a new trial. *State v. Sanders,* 341 S.C. 386, 534 S.E.2d 696 (2000).

Prior to re-trial of the case, the State moved to admit a transcript of Vigier's testimony from the first trial into evidence, asserting Vigier could not be located for service of subpoena because he had left the state in violation of the terms of a probationary sentence. Sanders objected to the admission of the prior testimony, arguing its admission would violate the Confrontation Clause of the Sixth Amendment to the United States Constitution. Specifically, Sanders' sister, acting as defense counsel, asserted that had she been allowed to participate at the first trial she would have been more thorough than defense counsel was in cross-examining Vigier concerning his alleged deal with the State in exchange for his testimony against Sanders. She further asserted that facts regarding the alleged deal were revealed only after Vigier testified in the first trial. The trial court found Vigier's testimony was admissible under Rule 804, SCRE.

The case proceeded to re-trial without a jury. Despite Sanders' denial of any involvement in the murder or robbery, the trial court found Sanders guilty as charged and sentenced him to thirty-five years imprisonment for murder, twenty-five years imprisonment for armed robbery, and five years imprisonment for criminal conspiracy.

## DISCUSSION

Sanders asserts the admission of Vigier's prior testimony violated his Confrontation Clause rights because he was not afforded an opportunity to cross-examine the witness

regarding "subsequent revelations" pertaining to the State's alleged "deal" with the witness. We disagree.

[W]hen a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate "indicia of reliability." Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness.

*Ohio v. Roberts,* 448 U.S. 56, 66, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). Here, Vigier was unavailable and his prior testimony fell within an established hearsay exception. Thus, Sanders' Confrontation Clause rights were not violated.

Under Rule 804(b), SCRE, certain statements are not excluded by the hearsay rule if the declarant is unavailable as a witness. Rule 804(b)(1) provides:

(b) Hearsay Exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

(1) Former Testimony. Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

"Unavailable" is defined in Rule 804(a) and includes situations in which the declarant is absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance by process or other reasonable means. Here, it is uncontested that the State made numerous unsuccessful attempts to procure Vigier's appearance at the re-trial by subpoena and that Vigier was, therefore, unavailable within the meaning of Rule 804(a) and (b).

The more central question, however, is whether Sanders was afforded an opportunity and had a sufficiently similar motive to develop Vigier's testimony during the first trial. We agree with the trial court that Sanders had such motive and opportunity. At the first trial, Vigier testified that while he

was incarcerated with Sanders, Sanders told him he shot and killed the victim with a .22 caliber pistol, then cleaned the gun and threw it on top of a restaurant in Georgia. He further testified the State had not offered him a deal and that no promises were made to him to secure his testimony. During cross-examination, Vigier acknowledged he hoped he would get a deal because of his testimony.

During the re-trial, the assistant solicitor made the following statement regarding his conversations with Vigier before the first trial:

> We were actually approached by his attorney . . . and he asked us if we would give him consideration. And we told his attorney . . . we couldn't get him a deal right now, but we would certainly take into account when . . . it came time for him to go to court. . . . The State is willing to stipulate that he did receive a recommended probation sentence sometime after . . . testifying in this trial, as well as the trial of his co-defendants. And it's the State's testimony that he was not given any deal, that we told him his cooperation would be considered when it came time for his case to go to court.

In ruling the testimony admissible, the court stated that in its opinion "there was at least some tacit understanding that [Vigier] might get some benefit at some point in time by virtue of [his] cooperation."

Sanders would have this court hold that the assistant solicitor's statements amount to a significant revelation as to secret negotiations, and Sanders' unawareness of these negotiations during the prior proceedings negatively impacted his ability to effectively cross-examine Vigier. Our review of the record convinces us differently. The assistant solicitor's recount of his conversations with Vigier was consistent with Vigier's testimony at the first trial: Vigier expected he would receive some benefit from his testimony against Sanders, but the State made no promise of a deal to secure his testimony. Despite ample opportunity, the only question defense counsel asked Vigier about his communications with the solicitor's office was whether he was hoping to receive a deal from them. Additionally, although Sanders argues the change in other evidence made Vigier's testimony more central to the State's

case in the re-trial, Vigier nevertheless testified Sanders confessed to the crimes and thus Sanders unquestionably had a motive to develop any potential weaknesses in his testimony during cross-examination. Because Sanders had sufficient opportunity and motive to develop Vigier's testimony during the original trial to satisfy the requirements of Rule 804(b)(1), SCRE and because Vigier was unavailable, the court properly admitted Vigier's prior testimony in the re-trial. As such, Sanders' right of confrontation was not violated.

**AFFIRMED.**

HOWARD and KITTREDGE, JJ., concur.